UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIDALA AARONOFF,<br><br>　　　Plaintiff,<br><br>v.<br><br>CURTIS R. OLSON et al.,<br><br>　　　Defendants. | Case No. 2:21-cv-09747-SB-PD<br><br>ORDER GRANTING MOTIONS TO DISMISS AND ANTI-SLAPP MOTION [DKT. NOS. 38, 39, 40, 43] |

　　　Plaintiff Vidala Aaronoff entered into a business relationship with Curtis R. Olson that ended in a series of state lawsuits filed by Plaintiff alleging that Olson sexually assaulted and otherwise harassed her and masterminded a conspiracy to retaliate against her.  To address the alleged harassment, Plaintiff sought restraining orders in proceedings presided over by two judicial officers—Judge Michael Convey and Judge Emily Spear of the Los Angeles Superior Court.  Judge Convey denied the application for a restraining order and awarded substantial attorneys' fees against her; Judge Spear subsequently addressed post-trial matters, including enforcement of the fee award.  Plaintiff appealed the adverse orders issued by Judges Convey and Spear on several grounds, including that the judges and their respective courtroom staff allegedly engaged in misconduct in performing their jobs, which purportedly resulted in Plaintiff's being deprived of due process and equal protection under the law.  Several appeals of the superior court's orders are pending before the California Court of Appeal.

　　　In the meantime, Plaintiff filed this federal lawsuit asserting civil rights violations against those involved in the state lawsuits, including:  the judges

1

(Judges Convey and Spear); a judicial assistant (Cindy Kim);[1] the court reporters (Marlene Burris and Debra Rivera); the courtroom bailiff for Judge Spear (William Koo); Olson and two of his alleged co-conspirators; and Olson's attorneys (Slaughter, Reagan & Cole, LLP, Lamdien Le, Buchalter, P.C., Eric Kennedy, and Ashley Milnes).  Dkt. No. 37 (Second Amended Complaint, SAC).  Olson and his alleged co-conspirators were dismissed without prejudice because there were no substantive allegations or any claims asserted against them, Dkt. No. 48; and Plaintiff has agreed to dismiss the claims against Olson's attorneys, Dkt. Nos. 57, 58, in response to their motion to dismiss and anti-SLAPP motion, Dkt. Nos. 39, 40.

Thus, the only contested pending motions are two motions to dismiss brought by the two judges, the judicial assistant, the two court reporters, and the bailiff.  Dkt. Nos. 38, 43.  The allegations against these defendants arise out of the performance of their responsibilities inside the courtroom and substantially overlap with the allegations asserted in the pending state appeal.  The Court finds this matter suitable for decision without oral argument, and Plaintiff's request for oral argument (Dkt. No. 70) is denied.  Fed. R. Civ. P. 78; L.R. 7-15.  The Court grants Defendants' motions to dismiss for the reasons discussed below.[2]

I.

In this federal lawsuit, Plaintiff claims that she is the victim of abuse both outside and inside the courtroom.  Outside the courtroom, Olson allegedly engaged in serious misconduct against her, causing her to file a number of lawsuits, including actions seeking civil harassment restraining orders.  These actions brought her into the state court system.  Inside the courtroom, she appeared before Judges Convey and Spear, who presided over the proceedings that are at issue in

---

[1] A judicial assistant (JA) in California state court performs the same basic functions as a courtroom deputy (CRD) in federal court.

[2] Defendants request that the Court take judicial notice of the dockets in the three relevant state court cases.  Dkt. No. 38-1.  Doe "takes no position on Defendants' request . . . ."  Dkt. No. 60 ¶ 7.  The request is GRANTED.  See *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record").  In addition, the Court sua sponte takes judicial notice of the briefs that Plaintiff filed in her state appeal.  *Id.*; see Dkt. No. 69 (directing Buchalter, P.C. to lodge the briefs by email with the Court).

this federal case. The motions in this case address the viability of the challenges to the actions taken by these judges and their staff.

A.

Plaintiff alleges that she first met Olson through their shared involvement in a real estate project, and that shortly thereafter he engaged in a pattern of abusive behavior toward her, including sexual assault and the placement of a secret recording device in her bathroom. SAC ¶¶ 23, 31, 33, 34, 36. Plaintiff reported these alleged crimes to the police, who submitted the matter to the Los Angeles County District Attorney's office for possible criminal prosecution. Id. ¶ 37. The sex crimes division of the District Attorney's office reviewed the submission; and Judge Spear allegedly was a deputy district attorney in that division at the time. Id. ¶ 115. The District Attorney's office declined to prosecute Olson. Plaintiff nevertheless sought and obtained a three-year, mediated "stay away" order against Olson in December 2015, id. ¶ 37; and a year later, in December 2016, Plaintiff filed a civil action against Olson, asserting a claim of sexual battery and other causes of action, id. ¶ 41.

After learning of the lawsuit against him, Olson allegedly enlisted various accomplices to harass and intimidate Plaintiff for purposes of destroying her life and avoiding judicial accountability. Id. ¶¶ 42–87. Plaintiff alleges that the harassment scheme involved Lenny Dykstra, who purportedly attempted to discredit Plaintiff and pressure her to drop the lawsuit. Id. ¶¶ 58–74. According to Plaintiff, Olson also employed "stalkers" to locate and harass her. Id. ¶¶ 78–85. This led Plaintiff to file for a second restraining order against Olson to enjoin him from using third parties as a means of harassment. Id. ¶ 86.

B.

In late 2018, Judge Michael Convey presided over Plaintiff's application for a restraining order, which was consolidated with Olson's separate case seeking a restraining order against Plaintiff. Id. ¶ 88. Plaintiff alleges that Judge Convey engaged in judicial misconduct, amounting to a "judicial cover-up scheme," because (1) he "took a keen interest" in Dykstra, a former professional baseball player, and engaged in sports banter; (2) he curtailed questioning about Olson's relationship with Dykstra (which was offered to show that Olson had known and used Dykstra to harass her); and (3) he took an "extra-long break" during which Plaintiff "reasonably believes" that he conspired with the court reporter, Marlene Burris, and Olson's attorneys to alter the transcript to remove any reference to

3

Olson and Dykstra's golfing relationship. *Id.* ¶¶ 89–92. After the evidentiary hearing, Judge Convey denied each party's restraining order request. *Id.* ¶ 93.

Plaintiff moved for reconsideration and a new trial based on Judge Convey's refusal to permit questioning into Olson's relationship with Dykstra. *Id.* ¶ 94. To support her motions, Plaintiff requested an expedited transcript, but Burris indicated that she was unable to prepare the transcript as quickly as requested. *Id.* ¶¶ 93–94. In place of the transcript, Plaintiff submitted her lawyer's declaration about Judge Convey's refusal to permit questions about the Olson-Dykstra relationship. *Id.* ¶ 94. Judge Convey denied Plaintiff's motions. *Id.* ¶ 96. Shortly thereafter, Plaintiff received the certified transcript from Burris, which allegedly was altered by omitting her lawyer's inquiry about Dykstra and Judge Convey's exclusion of further probing into that area. *Id.* Plaintiff appealed Judge Convey's denial of her request for a restraining order. *Id.* Upon preparing for the appeal, Plaintiff allegedly discovered that JA Kim had removed from the official record the second page of her lawyer's declaration, which contained the "pertinent facts." *Id.* ¶ 97.

Following Judge Convey's ruling, Olson moved for attorneys' fees. *Id.* ¶ 98. This motion raised the issue of Plaintiff's ability to pay the requested fee award. To show that Plaintiff had sufficient assets, Olson introduced evidence that Plaintiff owned real property that nominally was held by the "ATW Trust." *Id.* ¶ 100. Olson claimed that the trust was a "sham," designed to disguise Plaintiff's true ownership, and that Plaintiff should be treated as the actual property owner and alter ego of the trust for purposes of determining her ability to pay a fee award. *Id.* ¶ 100. Judge Convey agreed and ordered Plaintiff to pay approximately $80,000 in attorneys' fees. *Id.* ¶ 101. In her federal lawsuit, Plaintiff alleges that she did not own the real property, that Olson's lawyers submitted fraudulent evidence of ownership, and that Judge Convey had no jurisdiction to decide ownership of the trust assets. *Id.* ¶¶ 100–101.

C.

In late 2019, Plaintiff appeared before Judge Spear for post-trial proceedings related to the payment of attorneys' fees awarded against her. Plaintiff claims that Judge Spear engaged in various acts of judicial misconduct.

On December 11, 2019, Plaintiff filed a motion to disqualify Judge Spear because of her role as a prosecutor in the sex crimes division at the District Attorney's office when Plaintiff's sexual assault case was submitted for review for

possible criminal prosecution against Olson. *Id*. ¶ 115.  Judge Spear denied the disqualification motion, which Plaintiff alleges was wrongful.  *Id*.  That same day, Judge Spear allegedly attempted to intimidate Plaintiff as she was presenting oral argument.  Plaintiff claims that during oral argument, Judge Spear "signaled" her courtroom bailiff, Deputy Sheriff William Koo, who walked toward Plaintiff, stood 12 inches behind her, and adopted a "ready-to-shoot stance" by placing one foot forward, removing his gun strap, gripping his gun, and cocking his arm back.  *Id*. ¶ 103.  Plaintiff alleges that this action prevented her from speaking freely.  *Id*.  She further alleges that Deputy Koo later told her that he had the courtroom surveillance recordings erased.  *Id*. ¶ 105.

On January 22, 2020, Plaintiff requested permission to use an audio device to record the court proceedings as an accommodation under the Americans with Disabilities Act (ADA), because she suffers from certain medical conditions.  *Id*. ¶ 106.  Before hearing the ADA request, Judge Spear closed the courtroom to all but the courtroom staff, Plaintiff, and Plaintiff's ADA advocate.  Judge Spear denied Plaintiff's request to record the proceedings.  *Id*. ¶ 107.  Plaintiff alleges that the denial was erroneous, and that her ADA rights were further violated when the confidential information about her medical conditions was "leaked" to Olson's lawyers.  According to Plaintiff, one of Olson's lawyers later referred to Plaintiff's ADA request at a hearing, which suggested that Judge Spear improperly disclosed this information to that lawyer (or to that lawyer's colleague) in an ex parte communication.  Plaintiff claims that the court reporter (Rivera) engaged in a cover up by altering the transcript to state that one of Olson's lawyers had returned to the courtroom to attend the closed ADA hearing.  *Id*. ¶ 110.  Plaintiff further alleges that Judge Spear's judicial assistant, JA Kim, improperly mailed Plaintiff's private medical records to one of Olson's lawyers.  *Id*. ¶ 111.

Plaintiff claims that Judge Spear engaged in other acts of judicial wrongdoing, alleging that:  Judge Spear "improperly us[ed] her judicial powers to procure Trust documents," *id*. ¶ 112; Judge Spear falsely accused her on the record of banging on the courtroom doors after hours, *id*. ¶ 113; and Judge Spear "us[ed] her judicial powers" to conspire with Olson to "continue the scheme started with Judge Convey to steal the Trust's property," *id*. ¶ 114.

D.

On November 15, 2019, Plaintiff filed the original complaint in this case in state court but did not serve it.  Dkt. No. 1 ¶ 1.  Two years later, on November 15, 2021, Plaintiff filed and served an amended complaint.  *Id*. ¶¶ 3–4.  Defendants

5

removed this case to federal court on December 16, 2021. Plaintiff lodged the SAC on June 13, 2022, which was accepted and deemed filed without opposition on July 8, 2022.[3] Dkt. No. 48.

In the SAC, Plaintiff brings three causes of action: (1) a § 1983 claim against Judges Convey and Spear, JA Kim, and court reporters Burris and Rivera, for an alleged violation of her due process and equal protection rights; (2) a claim against all Defendants for conspiracy to violate her civil rights; and (3) a claim against Judge Spear, JA Kim, and Rivera for violation of the ADA. Plaintiff prays for compensatory damages, special damages, punitive damages, prejudgment interest, declaratory and injunctive relief, and reasonable attorneys' fees. SAC at 34.

Defendants move to dismiss on several grounds: (1) the Court lacks jurisdiction under the *Rooker-Feldman* doctrine; (2) Judges Convey and Spear and JA Kim are entitled to judicial immunity; (3) the Court must abstain under *Younger v. Harris*, 401 U.S. 37 (1971), and the Anti-Injunction Act; (4) the Court lacks jurisdiction over Judge Spear, Judge Convey, JA Kim, Burris, and Rivera because they are entitled to immunity under the Eleventh Amendment; and (5) the SAC fails to state a claim for which relief can be granted. Dkt. Nos. 38, 43.

II.

The first challenge to the Court's jurisdiction is based on the *Rooker-Feldman* doctrine. This doctrine, which bears the name of two cases from which it derives,[4] divests federal district courts of "authority to review the final determinations of a state court in judicial proceedings." *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986). District courts lack jurisdiction over any suit that is a "de facto" appeal of a state court judgment—i.e., a federal action that asserts injury from a legal error committed by a state court and seeks relief therefrom. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139–40 (9th Cir. 2004).

---

[3] The Court refers to the operative pleading as the SAC, though Plaintiff erroneously filed it—and the parties in their briefing refer to it—as the "First Amended Complaint." Moreover, because Defendants did not oppose the filing of the SAC at the July 8 conference, the Court rejects their procedural challenge to its having been filed in violation of Fed. R. Civ. P. 15. Dkt. No. 48.

[4] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The *Rooker-Feldman* doctrine also extends to "issues presented in federal court that are 'inextricably intertwined' with issues presented in a forbidden de facto appeal from a state court decision." *Id*. at 1142. Federal claims are "inextricably intertwined" with a state court decision when "the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (internal citation omitted).

A.

The *Rooker-Feldman* doctrine bars Plaintiff's claims. Plaintiff alleges that actions taken against her in state court proceedings before Judges Convey and Spear were unlawful and violated her constitutional rights. In particular, Plaintiff alleges the following:

- Judge Convey's order denying her request for a restraining order was the product of a conspiracy between Judge Convey, Olson, Dykstra, and other Olson affiliates and therefore violates her equal protection and due process rights;

- Judge Convey's order denying Plaintiff's motions for reconsideration and a new trial violated her due process rights because she was denied an expedited court transcript and because a key page of her lawyer's declaration was improperly removed;

- Judge Convey's order that awarded Olson $80,000 in attorneys' fees violated her due process rights since it was based on fraudulent real estate documents and was issued without jurisdiction over the entity Plaintiff claims owned the property described in the documents;

- Judge Spear's refusal to recuse herself, despite having previously worked as a prosecutor in a division responsible for reviewing Plaintiff's sex crimes case against Olson, violates her right to due process;

- Judge Spear's attempt to intimidate Plaintiff while she was delivering oral argument by signaling Deputy Koo violated her due process rights;

- Judge Spear's denial of her request to use an audio-recording device during court proceedings constitutes a violation of the ADA;

- Judge Spear's "leak" of Plaintiff's confidential medical information in an ex parte communication violates the ADA;

- Judge Spear's admonition to Plaintiff for banging on the courtroom doors after hours violated her due process rights; and

- Judge Spear's orders adding the ATW Trust as a judgment debtor for Olson's attorneys' fee award and levying a $10,000 sanction on the ATW Trust were part of a conspiracy to deprive the ATW Trust of its property and violated Plaintiff's due process rights.

At bottom, Plaintiff's claims are based on the alleged unlawfulness of Defendants' actions in the state cases and amount to a de facto appeal. Indeed, Plaintiff has raised many of the same issues in her state appeals.[5] On appeal, Plaintiff argues that Judge Convey was part of a conspiracy with Olson, as evidenced by Judge Convey's refusal to permit testimony about Olson's relationship with Dykstra and by his alleged participation in both the altering of the official transcript to eliminate any reference to the relationship and the removal of the second page of Plaintiff's lawyer's declaration. *See* Appellant Aaronoff's Opening Brief, Cal. Ct. App. Case No. B295388, at 32–34 (arguing that "Judge Convey refused to allow [Plaintiff's lawyer] to question Olson about Dykstra" and that he "took a suspicious extended break" and "conspired with [the] court reporter, Marlene Burris, [to alter the transcript]"); *id*. at 47 (arguing that "the judicial officers conspired to counterfeit a court transcript" and that the "the lower court omitted the second page of [Plaintiff's lawyer's] declaration"). Plaintiff further argues on appeal that Judge Spear violated her due process rights by refusing to recuse herself, and that Judges Convey and Spear improperly ordered Plaintiff to pay attorneys' fees despite lacking jurisdiction over the ATW Trust. *See, e.g.*, *id*. at 44 (arguing that Judge Spear's refusal to recuse herself deprived Plaintiff of "procedural due process "); Reply Brief of Vidala Aaronoff, Cal. Ct. App. Case No. B295388 at 23 (arguing that "[b]ecause there is no evidence that

---

[5] The Clerk is directed to file Plaintiff's opening brief and reply brief in California Court of Appeal Case No. B295388, which were lodged with the Court by Buchalter, P.C. Dkt. No. 69.

[Plaintiff] owns the condominium, the trial court abused its discretion by ordering [her] to pay Olson's attorney fees").

That Plaintiff is appealing the state rulings based on similar arguments advanced in her federal lawsuit demonstrates that she is impermissibly attacking the adverse decisions made in those state cases. *See Cooper v. Ramos*, 704 F.3d 772, 781–82 (9th Cir. 2012) (analyzing the substance of the plaintiff's federal grievances and finding that "his complaint in actuality challenges the fact-specific determination in his [state] case"). The relief sought in this case supports that conclusion. Plaintiff seeks not only damages but also declaratory and injunctive relief. In the First Amended Complaint, Plaintiff took express aim at the state rulings, seeking a declaration that they were void. Dkt. No. 1-1 at 74 (seeking a declaration that the orders, findings, rulings, and judgments of Judges Convey and Spear be "set aside" and deemed "void"). While the SAC omits this explicit request, Plaintiff nonetheless appears to seek similar relief in her general request for equitable relief. At a minimum, the relief sought in Plaintiff's federal lawsuit, if granted, would serve to undercut the state trial court rulings and potentially undermine the ultimate adjudication of those rulings on appeal.

*Rooker-Feldman* bars not only the claims against Judges Convey and Spear, but also the claims against JA Kim, Burris, Rivera, and Deputy Koo because they are "inextricably intertwined" with the issues presented in the de facto appeal.[6] *Kougasian*, 359 F.3d at 1142. That is, Plaintiff cannot succeed in her claims against the latter Defendants without a determination that Judges Convey and Spear "wrongly decided the issues before [them]." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring); *Cooper*, 704 F.3d at 778–79 (adopting this test). JA Kim allegedly removed a page of a declaration from the record and Burris allegedly altered a transcript in furtherance of a purported scheme to conceal the Olson-Dykstra relationship that is central to Plaintiff's claimed entitlement to a restraining order. These allegations, if true, would undermine the judicial rulings being challenged on appeal in state court by calling into question Judge Convey's decisions to exclude testimony about the relationship, deny the requested restraining order, and deny the motions for reconsideration and a new trial motion. Plaintiff's ADA claims against JA Kim and Rivera are based on their alleged conspiracy with Judge Spear to violate

---

[6] Deputy Koo has not raised the *Rooker-Feldman* doctrine in defense to Plaintiff's claim against him, but the Court has an independent obligation to ensure that it has subject matter jurisdiction. *E.g. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Plaintiff's ADA rights: JA Kim allegedly served Olson's attorneys with a copy of Plaintiff's medical documents; and Rivera allegedly altered the transcript of a closed proceeding to cover up the ex parte "leak" of her confidential information. A party's right to a confidential hearing, however, does not necessarily extend to the opposing party. *Vesco v. Superior Ct.*, 221 Cal. App. 4th 275, 279–80 (2013) (holding that the opposing party in that case was entitled to be present at an accommodations hearing because he was a person "involved in the accommodation process" under Cal. R. Ct. 1.100(c)(4)). Thus, the allegations against JA Kim and Rivera of improperly disclosing confidential information and concealing the disclosure are bound up in the question whether Judge Spear committed procedural error in allegedly releasing confidential information to Olson's counsel. *See Bianchi*, 334 F.3d at 898 (holding that a claim that requires the federal court to interpret the application of state procedural rules is barred by the *Rooker-Feldman* doctrine). Finally, Deputy Koo is alleged to have conspired with Judge Spear to have deprived her of a fair hearing through intimidation tactics. If true, this alleged conspiracy would undermine Judge Spear's rulings during that hearing. In short, since each of the acts Plaintiff alleges is "inextricably intertwined" with the state court proceedings, the Court lacks jurisdiction to hear Plaintiff's claims under the *Rooker-Feldman* doctrine. *Kougasian*, 359 F.3d at 1142.

B.

Plaintiff has offered a number of arguments in support of her position that this federal lawsuit is not a de facto appeal. None has merit.

First, Plaintiff emphasizes that the conspiracy is the gravamen of her complaint, and she argues that the *Rooker-Feldman* doctrine is inapplicable under the principles articulated in *Noel v. Hall*, 341 F.3d 1148, 1166 (9th Cir. 2003). In *Noel*, the Ninth Circuit held that the *Rooker-Feldman* doctrine did not bar claims where the plaintiff did not "assert[] as a legal wrong an allegedly erroneous decision by the state court" and instead "asserted as legal wrongs allegedly illegal acts committed by a party against whom he had previously litigated." *Id*. By contrast, Plaintiff asserts throughout her complaint that Judges Convey and Spear made erroneous rulings that deprived her of her civil rights, and that those rulings were erroneous partly because of the actions of other Defendants. Thus, *Noel* is distinguishable.

Second, Plaintiff argues, without supporting authority, that the *Rooker-Feldman* doctrine does not apply if a state court acts without jurisdiction. Ninth Circuit law is to the contrary. *See Doe v. Mann*, 415 F.3d 1038, 1042 n.6 (9th Cir.

2005) ("*Rooker-Feldman* applies where the plaintiff in federal court claims that the state court did not have jurisdiction to render a judgment."); *Bruser v. Bank of Hawaii*, 790 Fed. App'x 126, 127 (9th Cir. 2020) (applying the principle stated in *Doe v. Mann*). Moreover, Plaintiff has not shown that Judges Convey and Spear acted outside their jurisdiction. *See* discussion *infra*.

Third, Plaintiff argues that the *Rooker-Feldman* doctrine does not apply to allegations of fraud, relying on the following principle: "A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party." *Kougasian*, 359 F.3d at 1140–41. This principle is inapplicable to the allegations made against Defendants. Plaintiff claims that fraud was committed by the judges and their courtroom staff, who allegedly schemed to deny her request for a restraining order, deprive her of her ADA rights, and award attorneys' fees and sanctions against her. Dkt. No. 64 at 15–16. These allegations challenge acts of the state court itself, which does not fall within the extrinsic fraud exception. *Kougasian*, 359 F.3d at 1140. Accordingly, Plaintiff's claims are barred under the *Rooker-Feldman* doctrine and must be dismissed.

### III.

Judges Convey and Spear and JA Kim are also immune from suit here. Judges are immune from civil suits arising out of their official actions. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). If an act "is a function normally performed by a judge" and if it occurs when parties "deal[] with the judge in his judicial capacity," the act is judicial in nature and the judge is absolutely immune from suit for it. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Judicial employees such as court clerks are immune from suit for "purely administrative acts." *In re Castillo*, 297 F.3d 940, 952 (9th Cir. 2002). Purely administrative acts include filing tasks. *See Mullis v. U.S. Bankruptcy Court for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987).

### A.

The allegations against Judges Convey and Spear relate to actions taken in the course of adjudicating cases before them. As to Judge Convey, these actions include: his exclusion of testimony about Olson's relationship with Dykstra; his "extra long break"; his denial of the requested restraining order; his denial of Plaintiff's motions for reconsideration and a new trial; and his award of attorneys' fees. As to Judge Spear, these actions include: her denial of Plaintiff's

11

disqualification motion; her denial of Plaintiff's accommodations request; her admonishment of Plaintiff from the bench; and her signaling of the bailiff while in session. Each of these acts is judicial in nature, and Plaintiff's arguments to the contrary are unpersuasive.

Plaintiff first contends that Judge Spear's signal to Deputy Koo is a nonjudicial act because "[a]ssaulting a litigant is not a judicial act," as stated in *Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974). Dkt. No. 64 at 12. However, the allegation against Judge Spear—"signaling" a bailiff during an ongoing court proceeding—does not amount to a nonjudicial act of assault but rather constitutes a judicial act of maintaining courtroom control and security. Especially in the highly charged environment of disputes over restraining orders, judges are frequently required to take steps to maintain order, including summoning or signaling a bailiff, whose close proximity often serves to avoid potential volatility. That Plaintiff perceived the act allegedly taken by the bailiff to be intimidating does not strip Judge Spear of judicial immunity. To the extent that the bailiff's actions improperly affected the fairness of the proceedings, the remedy is to seek correction on appeal. This case is therefore distinguishable from the case upon which Plaintiff relies. *See Gregory*, 500 F.2d at 64 (noting that a physical assault by a justice of the peace in ousting the plaintiff from the courtroom "is not amenable to appellate correction" and falls outside the purpose of granting immunity to protect decision making).

Plaintiff next contends that modifying court transcripts, as alleged in this case, is a nonjudicial act. Specifically, Plaintiff alleges that Judge Convey conspired to manipulate the court transcript of proceedings before him when he took an "extra long break," and that Judge Spear participated in the alteration of the transcript of the ADA hearing before her. The sole case Plaintiff cites in support, however, undermines rather than supports her contention. The Seventh Circuit in *Eades v. Sterlinske*, 810 F.2d 723, 726 (7th Cir. 1987), held that the alleged act of causing a transcript to be altered was a judicial act shielded from liability. It is clear that maintaining a record of court proceedings is a judicial act, even if there is alleged wrongdoing. Judges Convey and Spear are therefore immune from suit based on such allegations.

Plaintiff's final argument is that a judicial officer is not entitled to immunity when he or she acts without jurisdiction. Acts taken "in the clear absence of jurisdiction," including when a judge acts in "clear lack of all subject matter jurisdiction," are not protected. *E.g. Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986); *Meek v. Cnty. of Riverside*, 183 F.3d 962, 965–66 (9th Cir. 1999).

12

Plaintiff's jurisdictional challenge is misguided. She argues that Judges Convey and Spear had no jurisdiction over the ATW Trust because the trust was a nonparty to the state suit. Both judges, however, clearly had jurisdiction to determine whether to impose and enforce an award of attorneys' fees, which included a determination about whether Plaintiff had the ability to pay them. In that context, the question whether the assets in the trust actually belonged to Plaintiff as the alter ego of the trust cannot be said to fall outside their jurisdiction for purposes of judicial immunity.[7]

B.

JA Kim is also entitled to immunity. The only allegations against her are that she filed a declaration with a page missing and served a copy of confidential medical documents on Olson's attorney. These are "purely administrative acts" that are "part of the judicial function" for which she is immune. *In re Castillo*, 297 F.3d at 952 (holding that a trustee "is entitled to quasi-judicial immunity for both scheduling and noticing the confirmation hearing"); *see also Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 916 (9th Cir. 2021) ("Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process.") (cleaned up); *Adams v. Committee on Judicial Conduct & Disability*, 165 F. Supp. 3d 911, 923 (N.D. Cal. 2016) (noting that court clerks are protected by quasi-judicial immunity for filing exhibits) (internal citation omitted).

Accordingly, the claims against Judge Convey, Judge Spear, and JA Kim must be dismissed on the separate and independent ground that these Defendants are absolutely immune from suit for the conduct described in the SAC.

IV.

Defendants also move to dismiss the SAC for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Since Judge Convey, Judge Spear, and JA Kim enjoy absolute immunity, the Court will not consider whether dismissal under Rule 12(b)(6) is yet another alternative basis to dismiss the claims against them. The Court will consider, however, whether dismissal under Rule 12(b)(6) is an independent ground for dismissal as to Deputy Koo, Burris, and Rivera.

---

[7] Of course, it is not for this Court to review the merits of any judicial decision made by Judges Convey and Spear, and it does not endeavor to do so in this order.

A.

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Assuming the veracity of well-pleaded factual allegations, a court next must "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.

B.

Plaintiff's first claim is brought under § 1983 for alleged violations of her rights to due process and equal protection. The § 1983 claim is asserted against Burris and Rivera, but not against Deputy Koo. The Court considers each theory of § 1983 liability in turn.

First, Plaintiff has not alleged a due process claim. To state either a procedural or substantive due process claim, a plaintiff must first show that a defendant's actions infringed a constitutionally protected liberty or property interest. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972). To state a procedural due process claim, a plaintiff must establish that the government failed to provide sufficient process to guard against the deprivation of a constitutionally protected interest. *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008). Significantly, the deprivation of due process must be shown to have occurred as a result of an abuse of authority, rather than mere "lack of due care," by a government actor. *Daniels v. Williams*, 474 U.S. 327, 332 (1986). As the Ninth Circuit has observed, "negligent conduct by the state official is not enough to state a claim under section

14

1983 based on an alleged violation of the fourteenth amendment due process clause." *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1413 (9th Cir. 1986).

Plaintiff has not adequately alleged intentional wrongdoing on the part of the two court reporters. She alleges that she "reasonably believes" that Judge Convey conspired with Burris and others "to counterfeit the official transcript" by omitting and changing what was actually stated on the record. SAC ¶¶ 92, 96. She also alleges that Burris "calculatingly" declined to produce an expedited transcript. *Id.* ¶ 93 (alleging that "Burris had a convenient delay . . . because she was busy with a purported appeal that took precedence"). These allegations of conspiracy and intentional malfeasance, however, are conclusory. Even accepting the allegation that the transcript was inaccurate, Plaintiff has not alleged any facts that would support a claim that the inaccuracy was the product of anything more than a mistake. Nor has she alleged any facts to support the assertion that Burris engaged in "calculating[]" misconduct in failing to agree to expedite the transcript. Plaintiff's allegations that Rivera altered transcripts of proceedings before Judge Spear are likewise conclusory and based on speculation. *Id.* ¶ 110 (speculating that Rivera altered the transcript to state that an Olson attorney was allowed to attend a portion of a closed session "[t]o hide Judge Spear's disclosure" of confidential information), ¶ 112 (conclusorily alleging "numerous alterations in Debra Rivera's court transcripts . . . which hide the truth . . ."). Moreover, Plaintiff has not shown an absence of an available process to correct the alleged transcript errors. She does not allege that she asked the trial court to correct the purported errors, nor does she claim that her challenge on appeal fails to provide her sufficient process to address the alleged errors. Thus, Plaintiff has failed to state a due process claim against Burris and Rivera. *Iqbal*, 556 U.S. at 678.

Second, Plaintiff has not alleged an equal protection claim. A plaintiff must show that a defendant "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir. 1998) (internal citations omitted); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). Plaintiff alleges that the various actions described in the SAC were done "on the basis of [her] status as a disabled, single female of mixed race." SAC ¶ 118. This allegation is conclusory and is therefore not entitled to acceptance. *Iqbal*, 556 U.S. at 678. Plaintiff has not alleged any fact to suggest that any Defendant acted based on Plaintiff's race or sex. Accordingly, Plaintiff's equal protection claim against Burris and Rivera fails.

C.

Plaintiff's second claim is against all Defendants for conspiracy to violate civil rights. To sustain such a claim, a plaintiff must plead sufficient facts to suggest that there was an agreement to violate her civil rights. *Woodrum v. Woodward Cnty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (conclusory allegations that defendants had formed a conspiracy are insufficient to state a claim).

Plaintiff's conspiracy allegations against Burris, Rivera, and Deputy Koo are conclusory and implausible. She alleges: "Plaintiff is informed and believes and thereon alleges that here, functioning as a well-coordinated single force, all Defendants collectively planned, agreed and acted to deprive Plaintiff of her constitutional rights . . . ." SAC ¶ 122. Plaintiff's conspiracy allegations against Burris and Rivera are speculative at best. *Id.* ¶ 92 (alleging that she "reasonably believes" that Judge Convey, Burris, Olson's attorneys, and others "conspired to counterfeit the official court transcript" during an "extra-long break"), ¶ 112 (alleging that Rivera altered the transcript to "hide Judge Spear's disclosure" of confidential information). And Plaintiff fails to offer any specific conspiracy allegation against Deputy Koo. *Id.* ¶ 103 (alleging only that "Judge Spear signaled Deputy Sheriff William Koo" during oral arguments), ¶ 105 (alleging that Deputy Koo told Plaintiff he had a courtroom video erased to eliminate evidence of his own actions without alleging participation in an agreement to violate Plaintiff's civil rights).

Accordingly, Plaintiff fails to state a conspiracy claim against Burris, Rivera, and Deputy Koo.

D.

Plaintiff's third claim is her ADA claim, which is alleged against Rivera, but not against Burris and Koo. To establish an ADA claim, a plaintiff must show: (1) she is an individual with a disability; (2) she is "otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) she was "either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) her "exclusion, denial of benefits, or discrimination was by reason of [her] disability." *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

16

As explained above, the only allegations against Rivera are that she altered court transcripts. SAC ¶ 110 ("To hide Judge Spear's disclosure [of confidential information to opposing counsel], court reporter Debra Rivera ('Rivera') altered the official court transcripts to state that [attorney] Kennedy was allowed to come back into the courtroom and attended Plaintiff's private ADA hearing."), ¶ 112 (vaguely and conclusorily asserting "numerous alterations in Debra Rivera's court transcripts"). There are no allegations suggesting that Rivera's purported transcript alterations constitute an ADA violation. Rather, any transcript alterations occurred *after* Judge Spear denied Plaintiff's request for an ADA accommodation and *after* Judge Spear allegedly disclosed confidential medical information. These allegations of after-the-fact transcript alterations of ADA proceedings do not state an ADA claim. Accordingly, Plaintiff has failed to state an ADA claim against Rivera.

V.

Plaintiff has not requested leave to amend the SAC. In any event, leave would be unwarranted in this case. Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a), but leave may be denied for reasons of "undue delay, bad faith or dilatory motive on the part of the [plaintiff], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Sisseton–Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996)). Plaintiff has already amended her complaint twice, including once in response to Defendants' motions to dismiss her First Amended Complaint. Amendment at this point would be futile because the claims are barred by the *Rooker-Feldman* doctrine and because the key allegations of wrongdoing in this case are directed against Judges Convey and Spear, who are absolutely immune for the acts alleged. JA Kim, too, is absolutely immune; and given the conclusory allegations against Burris, Rivera, and Deputy Koo after two amendments of the complaint, there is no reason to believe that yet another opportunity to amend would lead to a different result.

17

Accordingly, leave to amend is denied, and the claims against Judge Convey, Judge Spear, JA Kim, Burris, Rivera, and Deputy Koo are dismissed with prejudice.[8]

## VI.

On the unopposed motion to dismiss brought by Buchalter, P.C., Eric Kennedy, and Ashley Milnes, and the unopposed anti-SLAPP motion brought by Lamdien Le and Slaughter, Reagan & Cole, LLP, the Court dismisses Plaintiff's claims against these Defendants. For the foregoing reasons, Plaintiff's claims against Judge Convey, Judge Spear, JA Kim, Burris, Rivera, and Deputy Koo are DISMISSED with prejudice.

IT IS SO ORDERED.

Date: February 2, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge

---

[8] In light of this conclusion, the Court does not address the other grounds for dismissal asserted by Defendants.